UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

THE OMNI CORP. d/b/a
EXPRESSIONS CUSTOM FURNITURE,
JARIS CORP. d/b/a DESIGN CENTER,

    Plaintiffs,

V.                                         CASE NO. 3:06-CV-265 (RNC)

SONITROL CORP. d/b/a SONITROL
SERVICES CO.,

    Defendant.

## RULING AND ORDER

This is a diversity action against a provider of alarm services to recover damages arising from flooding at commercial premises. Defendant has moved to dismiss the action insofar as it seeks damages in excess of $300, the amount provided for in a damages limitation clause in the parties' contract. In addition, defendant moves to dismiss a claim brought under the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. §§ 42-110a, et seq. For the reasons that follow, the motion is granted.

I.   Facts

The complaint alleges the following facts, which are assumed to be true for purposes of ruling on the motion to dismiss. At all times relevant to the complaint, plaintiff Omni Corp. operated a furniture store in Norwalk, Connecticut. (Compl. ¶

1

2.)[1]  On August 7, 1998, Omni and defendant entered into a contract whereby defendant agreed to monitor Omni's store for water damage and notify Omni and local emergency services of any flooding.  (Compl. ¶¶ 4, 6.)  The contract includes the following provisions:[2]

14. Limitation of Damages.

   A. You understand and agree that we are not an insurer and that you must obtain insurance, if any, covering personal injury and property loss or damage on your premises and that the payments provided for herein are based solely on the value of the service as set forth herein and are unrelated to the value of your property or the property of others that may be located on your premises.  You represent that you have adequate insurance to protect your premises and property.

   B. You acknowledge that it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from our negligence, or our failure to perform any of our obligations, or a failure of the System

---

[1] Plaintiff Jaris Corp. is the successor in interest to certain of Omni Corp.'s assets and liabilities.  (Compl. ¶ 10.)

[2] Because the complaint refers to and relies on the parties' written contract, the text of the contract may be considered in ruling on the motion to dismiss.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

2

to properly operate, because of, among other things: the uncertain amount or value of your property or the property of others which may be lost or damaged; the uncertainty of the response time of the police or other authority; the inability to ascertain what portion, if any, of any loss would be proximately caused by our failure to perform any of our obligations or the failure of our equipment to properly operate; or the nature of the services we are to perform.

**C. You agree that if we are found liable for any loss or damage resulting from the products or services to be provided under this Contract, our LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO THE TOTAL OF ONE-HALF YEAR'S MONITORING PAYMENTS OR FIVE HUNDRED DOLLARS ($500), WHICHEVER IS LESS, and this liability shall be exclusive and shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to persons or property from a failure of the System or performance or nonperformance of any of our obligations and shall apply whether such claim is for negligence, gross negligence, misfeasance, nonfeasance, express or implied warranty, strict or product liability, breach of contract, contribution or indemnification, or any other legal claim against us, our employees, agents or assigns. WE SHALL NOT BE LIABLE FOR ANY GENERAL, DIRECT,**

**SPECIAL, EXEMPLARY, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES.**

   D. In the event that you want to increase our limit of liability, you can do so by paying an additional charge, and a rider shall be attached hereto setting forth the terms, conditions, and amounts of the additional limited liability and the additional annual charge therefor; but this additional obligation shall in no way be interpreted to hold us as an insurer.
(Doc. #18 Ex. A.)

   Annual payments under the contract amounted to $600. (See Doc. #18 Ex. A.)  Thus, the damages limitation provision of the contract limits defendant's liability to $300.

   On January 24, 2005, a water pipe burst in the store, causing water to flood the premises.  (Compl. ¶ 5.)  Defendant failed to notify Omni or local emergency services. (Compl. ¶ 7.) As a result of the uncontrolled flooding, the store's inventory was severely damaged.  (Compl. ¶ 7.)

   Plaintiffs commenced this action in Connecticut Superior Court by service of the complaint on January 23, 2006.  The complaint alleges that defendant breached the contract and the implied covenant of good faith and fair dealing by failing to provide flood protection and that this failure and the damages-limitation provision violate CUTPA.  Defendant removed the action

4

based on diversity jurisdiction.

II. Discussion

Defendant argues that the contract's damages limitation provision is enforceable under Connecticut law and that plaintiffs therefore cannot recover any damages in excess of $300, the sum specified in the contract. The overwhelming weight of authority supports the enforceability of damages limitation clauses in alarm service contracts. See, e.g., Leon's Bakery, Inc. v. Grinnell Corp., 990 F.2d 44, 48 (2d Cir. 1993) ("[I]t appears that all of the courts that have considered the validity of limitation-of-liability clauses in contracts for the provision of fire alarm systems have found those clauses to be permissible."); E.H. Ashley & Co. v. Wells Fargo Alarm Servs., 907 F.2d 1274, 1280 (1st Cir. 1990) (noting "the overwhelming weight of authority" in favor of such provisions); W. Alliance Ins. Co. v. Wells Fargo Alarm Servs., Inc., 965 F. Supp. 271, 275 (D. Conn 1997) (recognizing "the weight of authority finding exculpatory clauses in alarm systems contracts enforceable"). Plaintiffs cite no case holding such a clause unconscionable or unenforceable.

In Leon's Bakery, the Second Circuit ruled that Connecticut law permits limitation-of-liability provisions in fire alarm contracts. See 990 F.2d at 49-50. Because the Connecticut Supreme Court had not "addressed the enforceability of a contract

disclaimer of tort liability in the sale or installation of a fire protection system," the Court of Appeals looked to a Connecticut Superior Court opinion and decisions in other jurisdictions. Id. at 47-48. Quoting a California case involving a burglar alarm contract, the Court summarized the rationale for permitting such limitations of liability:

> [M]ost persons, especially operators of business establishments, carry insurance for loss due to various types of crime. Presumptively insurance companies who issue such policies base their premiums on their assessment of the value of the property and the vulnerability of the premises. No reasonable person could expect that the provider of an alarm service would, for a fee unrelated to the value of the property, undertake to provide an identical type coverage should the alarm fail to prevent a crime.

Id. at 48-49 (quoting Guthrie v. Am. Prot. Indus., 160 Cal. App. 3d 951, 954 (1984)); see also W. Alliance Ins. Co., 965 F. Supp. at 275. The Court found this rationale equally applicable to fire alarm contracts, observing that the price for fire alarm services "does not generally include a sum designed to anticipate the possible need to pay the purchaser the value of the property" and that a property owner is better positioned to know the property's value and to obtain insurance coverage. See 990 F.2d

at 49. The Court emphasized that the plaintiff was "a commercial entity presumably aware of the risk involved in reliance on such a system." Id. at 50. The Court also observed that, in view of the price plaintiff paid for the alarm service, it could not have thought it was obtaining fire insurance from the defendant. Id.

The Second Circuit distinguished the facts in Leon's Bakery from a district court case involving a negligence disclaimer in a contract for the purchase of an allegedly defective helicopter. See id. at 49 (citing Comind, Companhia de Seguros v. Sikorsky Aircraft Div. of United Techs. Corp., 116 F.R.D. 397 (D. Conn. 1987)). The district court had said that the validity of such a disclaimer should be determined on a case-by-case basis. See id. The Second Circuit observed that the helicopter had allegedly caused the claimed losses in that case. The fire alarm, in contrast, "though designed to detect the presence of fire, and thereby to limit the damage caused by the fire, [was] not itself the cause of the event or the agent of harm." Id. The Court concluded that "the district court in the present case properly inferred that the Connecticut courts would treat a limitation-of-liability clause in a fire alarm case differently." Id.

In response to the motion to dismiss, plaintiffs argue that Leon's Bakery does not accurately reflect Connecticut law in light of the Connecticut Supreme Court's recent ruling in Hanks

v. Powder Ridge Rest. Corp., 276 Conn. 314 (2005).[3] The issue in Hanks was whether enforcement of an exculpatory agreement purporting to release the operator of a recreational area from prospective liability for personal injuries caused by the operator's negligence would violate public policy. Id. at 326. After surveying the laws of other states, the Court adopted a "totality of the circumstances" test for determining what constitutes the public interest. Id. at 330 (citing Wolf v. Ford, 644 A.2d 522, 527 (Md. 1994); Dalury v. S-K-I, Ltd., 670 A.2d 795, 798 (Vt. 1995)). This test encompasses the factors set forth in Tunkl v. Regents of the University of California, 383 P.2d 441, 444-46 (Cal. 1963): (1) whether the agreement concerns a business of a type thought suitable for public regulation; (2) whether the party seeking exculpation is performing a service of importance to the public; (3) whether the party seeking exculpation holds itself out as willing to perform services for any member of the public; (4) whether the party seeking exculpation possesses an advantage in bargaining strength; (5) whether the contract is an adhesion contract, and, if so, whether it contains a provision whereby the customer can pay additional

---

[3] This appears to be plaintiffs' only argument in opposition to the motion to dismiss. They do not argue that the contract is ambiguous or that the damages limitation provision is procedurally unconscionable. Nor do they argue that Leon's Bakery incorrectly interpreted Connecticut law as it stood before the Hanks decision.

fees to purchase additional protection; and (6) whether the customer or his property is under the care or control of the seller.  276 Conn. at 328.

The defendant contends that <u>Hanks</u> does not govern damages limitation provisions in contracts for alarm services.  I agree. In <u>Hanks</u>, the Court framed the issue narrowly as the enforceability of an exculpatory agreement releasing the operator of a recreational facility from liability for personal injuries. <u>See</u> 276 Conn. at 326.  Though some parts of the opinion appear to refer to exculpatory agreements in general, the opinion's repeated references to recreational operators suggest that the decision is limited to that particular context.[4]  Consistent with its focus on recreational operators, moreover, the Court emphasized that the plaintiff, who was under the care and custody of the defendant, could not protect his interest by obtaining insurance himself.  <u>See</u> <u>id.</u> at 333-34.  The opinion also reflects

---

[4] <u>See, e.g.</u>, 276 Conn. at 332 ("[I]t is illogical to permit snowtubers, and the public generally, to bear the costs of risks that they have no ability or right to control."); <u>id.</u> at 335 n.11 ("We need not decide whether an exculpatory agreement concerning a voluntary recreational activity violates public policy if the only factor militating against enforcement of the agreement is a disparity in bargaining power . . . ."); <u>id.</u> at 336 ("The defendants and the dissent point out that our conclusion represents the 'distinct minority view' and is inconsistent with the majority of sister state authority upholding exculpatory agreements in similar recreational settings."); <u>id.</u> at 338 (Norcott, J., dissenting) ("I . . . would conclude that prospective releases from liability for negligence are permissible in the context of recreational activities.").

a particular concern with personal injuries. See id. at 332 n.8 (noting that exculpatory agreements shift the costs of negligence to health care insurers and the state); see also Wagner v. Murphy Moving and Storage, Inc., No. CV040103847S, 2006 WL 860705, at *4 (Conn. Super. Ct. Mar. 6, 2006) (distinguishing a bailment case from Hanks on the ground that it had "no impact on personal safety").

In this case, the inventory at the store was not under the care or custody of the defendant. The owner of the store was fully able to protect itself from the risk of water damage by purchasing insurance, as it represented it had done in the alarm services contract. It is clear from the terms of the contract, and from the fee paid, that insurance coverage was not being purchased or provided. There are no allegations of any personal injury. Finally, defendant's failure to notify plaintiff or local authorities is alleged to have only exacerbated the damage caused by the flooding, which itself was caused by the bursting of the water pipe.[5]

I conclude, therefore, that the enforceability of the damages limitation provision in the parties' contract is

---

[5] Plaintiffs point out that Leon's Bakery is a products liability case in which the alarm malfunctioned while under the customer's control. By contrast, they argue, the negligence in this case was defendant's failure to act on the alarm, rendering plaintiff's property under the control of the defendant. I am not persuaded that this distinction suffices to distinguish Leon's Bakery and render the parties' agreement unenforceable.

controlled by the decision in Leon's Bakery, which comports with the overwhelming weight of authority on the enforceability of limitation-of-liability provisions in alarm service contracts.[6]

Plaintiffs' CUTPA claim also fails. To prevail on this claim plaintiffs must be able to prove actions by the defendant that (1) offend "public policy as it has been established by statutes, the common law, or otherwise," (2) are "immoral, unethical, oppressive, or unscrupulous," and (3) caused substantial injury to consumers, competitors, or other businessmen. A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215 (1990) (quotation omitted). In the CUTPA claim, plaintiffs allege only that defendant failed to provide the promised protection and that the damages limitation provision is unconscionable. A mere breach of contract does not establish a violation of CUTPA, see Boulevard Assocs. v. Sovereign Hotels, Inc., 72 F.3d 1029, 1038-39 (2d Cir. 1995), and the damages limitation provision does not violate public policy. Accordingly, plaintiffs have not alleged conduct that could constitute a violation of CUTPA.

III. Conclusion

---

[6] Cf. Travelers Indem. Co. v. Sonitrol Sec., No. CV044001676, 2006 WL 932425, at *4-5 (Conn. Super. Ct. Mar. 24, 2006) (doubting "that the Hanks criteria for voiding an exculpatory agreement will prove to be applicable to this [alarm service] case," but denying summary judgment because of issues of fact).

11

Accordingly, defendant's motion for partial dismissal of the complaint [Doc. #18] is hereby granted.

So ordered.

Dated at Hartford, Connecticut this 2nd day of March 2007.

                                                 /s/
                                      Robert N. Chatigny
                              United States District Judge